1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

FRANK JOHN METTLER III, et al.,

Plaintiffs,

12

v.

13

SAFECO INSURANCE COMPANY
OFAMERICA,

14

15

Defendant.

CASE NO. C12-5163 RJB

ORDER DENYING CROSS-
MOTIONS FOR SUMMARY
JUDGMENT

16

17

18

19

20

21

22

23

24

        This matter comes before the Court on cross-motions for summary judgment.  The

Plaintiffs Frank and Linda Mettler request that the Court grant summary judgment holding that

Defendant Safeco Insurance Company of America (Safeco) breached the insurers' duty of good

faith and violated Washington's Consumer Protection Act (CPA), RCW 19.86, et seq., in failing

to conduct a reasonable investigation of Plaintiffs' insurance claim.  Dkt. 22.  Safeco seeks

summary judgment dismissal of the Plaintiffs' claims, asserting that as a matter of law Safeco

conducted a reasonable investigation and, under the applicable exclusions in the policy, properly

1   denied coverage.  Dkt. 23.  The Court has considered the pleadings in support of and in

2   opposition to the cross-motions and the record herein.

3                                **INTRODUCTION AND BACKGROUND**

4          For the purposes of summary judgment, Plaintiffs concur with the statement of facts as

5   set forth by Defendant Safeco.  See Dkt. 22 p. 2.  The Mettlers live in Glenoma, Washington.

6   Dkt. 2-1 p. 1.  During the period of July 1, 2008 through June 30, 2009, the Mettlers were

7   insured by a homeowners policy issued by Safeco.  Dkt. 2-1 p. 3; Dkt. 24-1 pp. 2-8.

8          On January 7, 2009, after a period of snow and heavy rain, a series of debris and mud

9   flows originating on a logging clearcut above the Mettlers' property and dammed a seasonal

10  creek causing the water to backup and overflow the banks of the creek.  Ultimately, the debris

11  dam gave way and a flash flood carried mud and debris onto the Mettlers' property, damaging

12  both real and personal property of the Mettlers.  Dkt. 24-1 pp. 48-74; 76-90.

13         On January 19, 2009, Mr. Mettler reported their damage claim through his insurance

14  agent to Safeco.  Dkt. 24-1 p. 10, 54-55.  Safeco assigned the claim to their mudslide claims

15  handler, Dave Pemberton.  Dkt, 24-1 pp. 13-14.  Dave Pemberton called Mr. Mettler and noted

16  the following information in the claim file:

17         I called the insured, Frank Mettler, and introduced myself and acknowledged his loss
           report.  He let me know that the hill above his house had been logged off about 3 or 4
18         years ago.  Snow and heavy rain caused a great deal of mud flow and mud slides.  They
           believe there were between 50 and 100 in total.  He has a little seasonal creek going
19         through his property that is dry in the summer.  The mud blocked the creek and the creek
           water overflowed the creek banks and flowed around the house and outbuildings.  No
20         significant damage caused to buildings other than some discoloration of siding and some
           warpage on doors to shop building.  The most damage is the mud that flowed into the in-
21         ground swimming pool.

22         I informed Mr. Mettler that there were policy exclusions for loss caused by mudslides,
           mudflows, surface water and overflow of a body of water such as creeks and streams.  I
23         told him it sounds like those exclusions may come into play here, but at this point I can't

24

1   tell for sure.  I told him that I would have a claims representative contact him and go out
    and inspect the property and see if cause of loss can be positively determined.

2

3   He appreciates the attention and hopes we can help out as he has been paying premiums
    for over 40 years and never made a claim before.

4   Dkt. 24-1 p. 16.

5       Neither Mr. Mettler, nor Mrs. Mettler, recall having spoken with Mr. Pemberton or

6   anyone at Safeco about their claim.  Dkt. 24-1 pp. 56-58, 64-65, 82-84.

7       Safeco field investigator Rick Burrow was assigned to conduct an inspection of the

8   Mettler property.  Dkt. 24-1 p. 18.  Mr. Burrow's field notes state as follows:

9   Met with Mr. Mettler.  Performed photo survey of mud slide areas.  A clear cut hillside
    across the road from the Insd dwg suffered 3 slides which clogged a creek.  The water
10  buildup behind the temporary dam built over 40' deep per Insd, and when the dam broke
    the water and debris came down the creek and caused mud to flow across the road onto
11  the Insd property.

12  Advised Insd that I saw no damage which would be covered.  He understood this but did
    not like it.

13

    Uploaded pics to the file and closing task.

14
    Dkt. 24-1 p. 19.

15      Again, neither Mr. nor Mrs. Mettler recall meeting with a Safeco field investigator, or

16  Safeco having an inspection conducted of their losses.  Dkt. 24-1 pp. 56-58, 64-65, 82-84.

17      On February 3, 2009, Safeco sent a claim denial letter to the Mettlers.  Dkt. 24-1 pp. 28-

18  30.  Specifically, the letter provides:

19

20  You have submitted this claim to Safeco Insurance Company of America for
    potential payment under policy OH1032076 for damages to your property
    located at 230 Martin Rd, Glenoma, WA, 98336-0104. After a review of your
21  policy and the facts that have come to our attention, Safeco Insurance
    Company of America regrets that it is unable to provide payment for the
22  damages you have claimed because your policy does not provide coverage for
    this loss. Our reasons for this denial are as follows:

23

24

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 3

As you are aware, this claim arises from mudslides and mudflows with the damming of your seasonal creek with the resulting overflow. Our investigation revealed that weather in the form of snow and heavy rains acted on the hillside where logging had taken place a few years back with the resulting earth movement and damming of the creek. It is understood the actions or failure to act by a logging company and/or owner of the hillside property regards post-logging plantings and/or soil stabilization may have exacerbated the mudflows and mudslides.

Your insurance policy form CH0-6033EP 5/98 as modified by form CH0-6133WAEP 10/04, includes the following provisions and please note where part of an exclusion is applicable the entire language of the exclusion has been cited.

**BUILDING PROPERTY LOSSES WE COVER**
We cover accidental direct physical loss to property described in Building Property We Cover except as limited or excluded.

**BUILDING PROPERTY LOSSES WE DO NOT COVER**
We do not cover loss caused directly or indirectly by any of the following excluded perils. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

8. Earth Movement, meaning:
   a.  Earthquake; landslide; mudflow; earth sinking, rising, shifting or contracting, all whether combined with water or not; or
   b.  Mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces or flood or tidal wave; gaseous emission or acid rain;
   All whether caused by, resulting from, contributed to or aggravated by Volcanic Action.
   If direct loss by fire or breakage of glass or safety glazing material which is part of a building, storm door or storm window ensues, then we will pay only for the ensuing loss.
   This exclusion does not apply to loss by theft. All other provisions of this policy apply.

9. Water Damage, meaning:
   a.  flood, surface water, waves, tidal water, tsunami, overflow of a body of water, or spray

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 4

1          from any of these, whether or not driven by
           wind;
2      b.   water below the surface of the ground, including
            water which exerts pressure on, or seeps or leaks
3           through a building, sidewalk, driveway,
            foundation, swimming pool, hot tub or spa,
4           including their filtration and circulation systems,
            or other structure;
5      c.   water which backs up through sewers or drains
            originating outside of the residence
6           premises' plumbing system; or
       d.   water which backs up, overflows or discharges,
7           for any reason, from within a sump pump, sump
            pump well or any other system designed to
8           remove subsurface water which is drained from
            the foundation area.
9      Direct loss by fire, explosion or theft resulting
       from water damage is covered.

10

11     15.  Acts or decisions, including the failure to act or
       decide, of any person, group, organization or governmental
       body.  However, any ensuing loss not excluded is covered.

12

13     16.  Weather that contributes in any way with a cause or
       event excluded in this section to produce a loss. However,
       any ensuing loss not excluded is covered.

14

       No ensuing loss that are not excluded were discovered.

15

16     As you can see in the above-referenced policy language there is no coverage for this loss.
       Therefore, according to the terms and conditions of your policy, we are unable to provide
       any coverage for this loss.

17

       Dkt. 24-1 pp. 28-30.

18

19         On December 12, 2011, counsel for the Mettlers wrote to Safeco requesting an

20     explanation as why Safeco denied the Mettlers' insurance claim.  Dkt. 24-1 p. 32-33.  The

       letter asserts that the property was damaged as the result of logging activities upland of the

21     Mettlers' property.  The letter states that logging caused a landslide and flooding which

22     damaged the insureds' property.  Referencing the efficient proximate cause rule, the letter

23

24

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 5

1  further states that it is counsel's belief that logging that causes landslides and flooding is a

2  covered event and that no exclusions apply. *Id.*

3      On December 21, 2011, Safeco's property loss specialist responded. Dkt. 24-1 pp. 37-

4  39. This letter restates Safeco's previous position that there was no coverage due to

5  application of the exclusions. *Id.* Safeco further explained that the claim that the logging

6  operations was the proximate cause of the loss would be excluded under the policy's

7  Planning, Construction or Maintenance exclusion. *Id.* at 39. This exclusion is defined, in

8  part, as faulty, inadequate or defective: planning, development, design, workmanship, repair,

9  construction, grading, compaction, or maintenance of property on or off the insured location

10  by any person or organization. However any ensuing loss not excluded is covered. *Id.*

11      The instant lawsuit followed.

12                          **SUMMARY JUDGMENT STANDARDS**

13      Summary judgment is appropriate only when the pleadings, depositions, answers to

14  interrogatories, affidavits or declarations, stipulations, admissions, answers to interrogatories,

15  and other materials in the record show that "there is no genuine issue as to any material fact and

16  the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a

17  motion for summary judgment, the evidence, together with all inferences that can reasonably be

18  drawn therefrom, must be read in the light most favorable to the party opposing the motion.

19  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of*

20  *Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

21      The moving party bears the initial burden of informing the court of the basis for its

22  motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex*

23  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of

24

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 6

1    proof, the moving party must make a showing that is sufficient for the court to hold that no

2    reasonable trier of fact could find other than for the moving party.  *Idema v. Dreamworks, Inc*.,

3    162 F.Supp.2d 1129, 1141 (C.D. Cal. 2001).

4            To successfully rebut a motion for summary judgment, the non-moving party must point

5    to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

6    *Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact that might

7    affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc*., 477

8    U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue,

9    summary judgment is not appropriate.  *See v. Durang,* 711 F.2d 141, 143 (9th Cir. 1983).  A

10   dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable

11   jury could return a verdict for the nonmoving party."  *Anderson*, at 248.  The mere existence of a

12   scintilla of evidence in support of the party's position is insufficient to establish a genuine

13   dispute; there must be evidence on which a jury could reasonably find for the party.  *Id*., at 252.

14           The instant action was removed to this Court based on diversity of the parties.

15   Accordingly, the issues presented are governed by Washington State law.  See *Insurance Co. N.*

16   *Am. v. Federal Express Corp*., 189 F.3d 914, 919 (9th Cir. 1999).  Washington State law is clear

17   that the interpretation of policy language contained in an insurance contract is a question of law.

18   *Butzberger v. Foster*, 151 Wn.2d 396, 401 (2004); *State Farm General Ins. Co. v. Emerson*, 102

19   Wn.2d 477, 480 (1984).  Where there are no material facts in dispute, interpretation of the

20   insuring language at issue is appropriately decided on summary judgment.  See *American*

21   *Bankers Ins. v. N.W. Nat. Ins*., 198 F.3d 1332 (11th Cir. 1999).

22

23

24

1 **INSURANCE BAD FAITH**

2     In Washington, insurers have a duty to act in good faith and to deal fairly with their

3 insureds, and violation of that duty may give rise to a tort action for bad faith. *Smith v. Safeco*

4 *Ins. Co*., 150 Wn.2d 478, 484 (2003); *Truck Ins. Exch. v. Vanport Homes, Inc*., 147 Wn.2d 751,

5 765 (2002). Claims of insurer bad faith "are analyzed applying the same principles as any other

6 tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Smith,*

7 150 Wn.2d at 478. To succeed on such a claim, the insured must show the insurer's breach of the

8 insurance contract was "unreasonable, frivolous, or unfounded." *Overton v. Consol. Ins. Co*.,

9 145 Wn.2d 417, 433 (2002). The test is not whether the insurer's interpretation of the policy is

10 correct, but whether the insurer's conduct was reasonable. *Wright v. Safeco Ins. Co*., 124

11 Wn.App. 263, 279–80 (2004). The question of whether an insurer acted in bad faith is generally

12 a question of fact. *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc*., 165 Wn.2d 122, 130 (2008).

13     Under Washington law, duty to act in good faith includes the duty to reasonably

14 investigate a claim; this duty includes conducting any necessary investigation in a timely fashion

15 and conducting a reasonable investigation before denying coverage. *Aecon Bldgs., Inc. v. Zurich*

16 *North America*, 572 F.Supp.2d 1227, 1235-36 (W.D. Wash. 2008); *Coventry Associates v.*

17 *American States Insurance Co*., 136 Wn.2d 269, 280-81 (1998). Moreover, "[a]n insurer may

18 not fail to conduct a reasonable investigation simply because it appears initially that the loss is

19 not covered." *Fireman's Fund Ins. Co. v. Alaskan Pride Pshp*., 106 F.3d 1465, 1470 (9th Cir.

20 1997). "An insurer does not have a reasonable basis for denying coverage and, therefore, acts

21 without reasonable justification when it denies coverage based upon suspicion and conjecture."

22 *Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 917 (1990). An insured may maintain an action

23 against its insurer for bad faith investigation of the insured's claim and violation of the Consumer

24

Protection Act (CPA) regardless of whether the insurer was ultimately correct in determining coverage did not exist.  *Coventry Associates,* 136 Wash.2d at 279–80.

Harm is an essential element of an action for an insurance company's bad faith handling of a claim. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc*., 165 Wash.2d 122, 1323 (2008).  If the insured shows by a preponderance of the evidence that the insurance company breached its duty of good faith, there is a presumption of harm.  *Id*.  The insurance company can rebut this presumption by showing by a preponderance of the evidence that its breach did not harm or prejudice the insured.  *Id*.

The determinative question is "the reasonableness of the insurer's actions in light of all the facts and circumstances of the case."  *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 919-20 (1990).  The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based on a reasonable investigation and reasonable grounds.  If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate.  If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified.  *Smith*, 150 Wn.2d at 486; *Lakehurst Condominium Owners Ass'n v. State Farm Fire and Cas. Co*., 486 F.Supp.2d 1205, 1213 (W.D. Wash. 2007).

For purposes of determining coverage under an all-risk property insurance policy, the efficient proximate cause rule applies when two or more perils combine in sequence to cause a loss and a covered peril is the predominant or efficient cause of the loss; in such a situation, the

1  efficient proximate cause rule mandates coverage, even if an excluded event appears in the chain

2  of causation that ultimately produces the loss.  *Vision One, LLC v. Philadelphia Indem. Ins. Co*.,

3  174 Wn.2d 501, 519 (2012).  The efficient proximate cause rule operates as an interpretive tool

4  to establish coverage when a covered peril sets other causes into motion which, in an unbroken

5  sequence, produce the result for which recovery is sought.  *Id.*

6        Here, there is a genuine issue of material fact as to whether a reasonable investigation

7  was conducted as to whether a possible covered peril, i.e. logging, set other excluded causes in

8  motion, i.e. earth movement and water damages.  Although aware of the logging activity, there is

9  an issue of fact as to whether the on-site field investigator made a reasonable investigation into

10  the cause of the mudslide and flooding onto the Mettlers' property.

11        Safeco's claim denial letter also references the "Acts and Decisions" exclusion. Dkt. 24-1

12  p 29.  This exclusion is defined as "Acts or decisions, including the failure to act or decide, of

13  any person, group, organization or governmental body.  However, any ensuing loss not excluded

14  is covered."  *Id.*  Other than an acknowledgement by Safeco that "the action of failure to act by a

15  logging company … may have exacerbated the mudflows and mudslides," Safeco provided no

16  explanation for the applicability of the Acts or Decisions exclusion.  See Dkt. 24-1 pp. 28-30.

17        Compounding the lack of explanation, the provision appears to be overly broad,

18  ambiguous, and irreconcilable with other policy provisions and the very concept of an all-risk

19  insurance policy.  *Jussim v. Massachusetts Bay Ins. Co*., 597 N.E.2d 1379, 1381–82 (Mass. App.

20  1992).  The acts or decisions exclusion, taken literally, would exclude coverage from all acts and

21  decisions of any character of all persons, or entities.  "Such an interpretation would leave the

22  policy practically worthless."  *Id.*  See also *Auto-Owners Ins. Co. v. Hansen Housing, Inc*., 604

23  N.W.2d 504, 512

24

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 10

1    (S.D. 2000).  Under Safeco's application of this exclusion to the logging operations, any time a

2    human or an organization of humans had any role in a loss, no matter how tangential, the policy

3    would exclude coverage.  Presumably, the "any act or decision" exclusion, under this analysis,

4    would still provide coverage for an act of God, such as a fire caused by a bolt of lightning.

5    However, even in those circumstances it could be argued that a fire caused by lightening should

6    be excluded if the fire department failed to act or respond appropriately when alerted to the fire.

7           Given the amorphous and expansive language in the provision, and Safeco's lack of

8    explanation as to its applicability, the Court finds that it does not speak with the clarity required

9    for the Court to rule as a matter of law that it excludes coverage.

10          Finally, the "Planning, Construction or Maintenance" exclusion was referenced by

11   Safeco as an additional bar to coverage for a loss caused by the logging operations.  Safeco first

12   raised this exclusion nearly three years after issuance of the denial letter in a response to an

13   inquiry from the Mettlers' counsel.

14          A policy provision must be asserted as a basis for denying coverage.  *Vision One, LLC v.*

15   *Philadelphia Indem. Ins. Co*., 174 Wn.2d 501, 519 (2012).  Safeco never invoked this clause in

16   the denial letter.  The basis for causation of the Mettlers' loss is properly analyzed in accordance

17   with the policy provision invoked in Safeco's's denial letter, not at some future date under the

18   threat of litigation.  See *Vision One, LLC*., at 521.

19          Further, it cannot be resolved from the record as to whether this exclusion is applicable to

20   the logging operations.  The language of the Planning, Construction or Maintenance exclusion

21   confines its applicability to "faulty, inadequate, or defective" logging operations.  Dkt. 24-1 p. 4.

22   Safeco's investigation and coverage determination appears not to have made an inquiry as

23   whether the logging operations meet these criteria.

24

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 11

1    The Court also finds that there are genuine issues of material fact as to the damages

2  resulting from Safeco's conduct.

3      The Court finds that genuine issues of material fact preclude summary judgment for

4  either party on the cause of action for bad faith.  Specifically, questions of fact remain as to

5  whether Safeco acted in a manner that was "unreasonable, frivolous, or unfounded" in its

6  investigation of the loss.

7                              **CONSUMER PROTECTION ACT**

8      To establish a violation of the Washington Consumer Protection Act (CPA), a plaintiff

9  must demonstrate: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce;

10  (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.

11  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co*., 105 Wn.2d 778 (1986); RCW

12  19.86.060.  The Washington Administrative Code (WAC) contains specific consumer protection

13  standards for the insurance industry.  The regulations provide that "failing to adopt and

14  implement reasonable standards for the prompt investigation of claims arising under insurance

15  policies" and "refusing to pay claims without conducting a reasonable investigation" are unfair

16  or deceptive acts or practices.  WAC 284-30-330 (2007).  Violations of WAC 284-30-330

17  constitute per se violations of the Consumer Protection Act.  *Truck Ins. Exchange v. Vanport*

18  *Homes, Inc*., 147 Wash.2d 751, 764 (2002).

19      In addition, an insurer's bad faith constitutes a per se violation of the CPA.  *Ledcor Indus.*

20  *(USA), Inc. v. Mut. of Enumclaw Ins. Co*., 150 Wn.App. 1, 12 (2009).

21      Summary judgment is denied for the same reasons applicable to the bad faith claim.

22

23

24

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 12

1

**CONCULSION**

2    For the reasons provided above, neither party is entitled to summary judgment.

3    Accordingly, it is hereby **ORDERED**:

4    1.   Plaintiffs' Motion for Summary Judgment (Dkt. 22) is **DENIED**.

5    2.   Defendant's Motion for Summary judgment (Dkt. 23) is **DENIED**.

6    Dated this 22nd day of January, 2013.

7

8

9    ROBERT J. BRYAN
     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING CROSS-MOTIONS FOR
SUMMARY JUDGMENT- 13